R. D. FRAYSER, THOMAS BARRETT and W. F. SHIP-
PERS v. THE STATE.

1. CRIMINAL LAW. *Nuisance. Obstruction of streets by street railroad com-
pany.* A contract affixed to a grant of a right of way to a chartered
street railroad company through the streets of a city, which attempts
to bind the company by certain stipulations as to mode and manner
of constructing tracks, etc., etc., and which the company refuses to
sign, can not operate to prevent the company from laying its tracks,
and it will not be liable to indictment for obstructing the streets as
long as it keeps within reasonable bounds.

2. CRIMINAL PLEADING. *Special pleas.* Special pleas to an indictment
are rare, and in general amount to a plea of not guilty, but if they
contain a good defense to the allegations of the indictment, they will
be sufficient.

FROM SHELBY.

Appeal in error from the Criminal Court of Shelby
county.    A. H. DOUGLASS, J.

GANTT & PATTERSON and THOMAS SCRUGGS for
Frayser, Barrett and Shippers.

S. P. WALKER, T. B. TURLEY and ATTORNEY-
GENERAL LEA for the State.

DEADERICK, C. J., delivered the opinion of the court.

Plaintiffs in error were jointly prosecuted to con-
viction upon three indictments found against them in
the criminal court of Shelby county.    They were re-
fused a new trial, judgment was pronounced, and they
have appealed to this court.

The three indictments were consolidated and heard together, and charged the defendants with obstructing one of the public streets of the city of Memphis, on the 19, 20 and 21 of September, 1885, with large quantities of rock, earth and timber, making it impassable, to the common nuisance of all the citizens, etc.

To each of said three indictments the defendants pleaded specially, incorporating in said pleas, with the averments that they were of officers and agents of the Memphis City Railroad Company, the charter granted said company by the State, and transcript of the record of said suit instituted by said company against the mayor and aldermen of said city, and a contract between said company and said mayor and aldermen, entered into in 1866, and another contract between the same parties, entered into in 1872; and they aver in said several pleas, that as said officers, agents, etc., of the said railroad company, they occupied said street with employes, material and machinery necessary to construct a street railroad, which they were justified in doing under said charter, and in no wise obstructed said street further than was necessary to do in the construction of their said railway thereon, which they were authorized to do under said charter, and were not guilty of creating a nuisance by the partial unavoidable obstruction of the street in the prosecution of said work.

Such are, in substance, the allegations of the several pleas of justification to the said indictments. While special pleas to an indictment or presentment are of rare occurrence in practice, and in general amount to

a plea of not guilty, we see no objection to treating the pleas in this case as sufficient, for if it be true in fact, that the charter and contracts, without more, authorized the acts complained of, the defendants would not be guilty of wilfully and unlawfully obstructing the street, as charged in said indictments.

Upon the trial of the case, the court charged the jury: "That the Taxing District may prescribe reasonable terms upon which said streets and highways may be occupied by street railway companies, and said terms, if reasonable in themselves, may be imposed by ordinance, or by contract, at the pleasure of the city; so, if the defendants, as officers and agents of the Memphis City Railroad Company, enter upon the streets, claiming the right to do so under their charter and contracts, to lay said track, without first having obtained the permission to do so, and tear up the street for this purpose alone, and without having contracted for said permission, and a reasonable contract was proposed by the city and rejected, defendants would be. guilty; the court being of opinion that neither said charter, nor said contracts, nor said adjudication aforesaid, would authorize said company to construct their railroad upon the streets of the city without having first obtained the permission of the city, provided the city tendered the right to lay tracks upon the condition of the company's subscribing a contract with it, reasonable in its terms."

The court further charged: "That the charter of the street railroad company and the contracts with the city of Memphis do not give said railroad company
43—VOL. 16.

the right of way over the streets of said city until the city has agreed to said occupancy, and before said company can lawfully enter upon said streets, said Taxing District may impose reasonable terms by further contract." "In other words," said the court, "said company must ask the right of way on said streets from said District, and before granting said right of way, said District may impose reasonable terms by contract."

The court also charged the jury, "that the Taxing District was right in declining to furnish the grade of the street (which had been applied for), until the company entered into a further reasonable contract with the city."

The defendants asked the court to charge the converse of the several propositions hereinbefore stated as charged, which the court refused to do.

The cause has been earnestly and ably argued on both sides. The charge of the court presents, as the controlling questions to be decided, whether, under the charter, contracts and former adjudication referred to, the company was bound to obtain the permission of the city authorities before entering upon the street and constructing its railroad, and whether it was bound to enter into a further written contract with the city before it could proceed to construct its road, as to all those matters which are already within the supervision and control of the municipal authorities, under their police powers. Upon the one side it is not denied that the Legislature may grant the company power to construct its road upon the streets of the city. This

has been done. On the other hand it is conceded that, under its police powers, the city may pass proper ordinances to regulate and secure the public safety and convenience. But it is denied by the company that the city can prevent the company from laying its track upon the streets, in conformity with its charter, unless the company will first enter into a written contract with the city in regard to the construction of the road. In other words, it is denied that the city may exact from the company a written obligation to do what its charter and the law obliges it to do, and to refrain from doing what it has no right to do.

The court charged the jury that the city could prevent the construction of the road unless the company would first enter into a contract, etc. It is argued that this charge is sustained by the provisions of the fourth section of the company's charter. That section is as follows: "That said company, by their said directors and officers, shall have power to make, complete and execute all contracts with the city of Memphis, *or other parties*, for any purpose whatever connected, either directly or indirectly, with the constructing, maintaining or operating said railway, and may alter or amend the terms of the same with said parties, and may construct, maintain, use and operate street railways by animal power, on all of the streets of the city of Memphis, in the State of Tennessee, for that purpose using all necessary machinery and equipments; said company to use neatly constructed, commodious and safe cars, to be well adapted to such use and purpose; may enter into all necessary contracts

for the building and operating of said railway, and declare dividends of the capital stock of the same."

There is nothing in the foregoing section which can be construed as an obligation to contract. But the "power to make" contracts with the city, "or other parties," is conferred, which power may or may not be exercised, at the election of the company. Much less is there any thing in said section to sustain the construction that the company must contract, as a condition precedent, to the exercise of rights directly conferred by the charter, on the conditions therein specified.

The seventh section of the charter prescribes that the road shall be constructed on the most approved plan, and run as often as public convenience requires, and shall be subject to such reasonable rules and regulations as may, from time to time, be prescribed by ordinance, and regulates the fare, etc.

The eighth section directs that the rails shall not obstruct carriage travel, and the company is required to conform their tracks to the grade of the streets as they now are or as changed, at their own expense, and keep in good repair their track and two feet upon each side of it.

In 1866, soon after the organization of the company, the city, by threats and force, compelled the company to abandon work begun towards constructing their road, upon the idea that it, the city, had the right to prevent work until it saw fit to give its assent to the construction.

The company filed a bill to restrain such interference, and obtained an injunction, which was made perpetual,

and contracts were made between the city and company, in 1866 and 1872, in which the rights of the company to lay their tracks upon said streets, under their charter, was fully recognized.

It is unnecessary to notice more in detail these proceedings in court and the contracts mentioned. It is sufficient, for the purposes of this case, to say, that the defendants, under their charter, have the right to construct the road begun, and it not appearing that any obstruction, other than what necessarily resulted from the prosecution of their work, is complained of, they did only what they had a right to do, under their charter. The city may pass proper rules and regulations in respect to said road. The charter reserves that right to it. The law confers it, but they can not force the company to contract with it. For any threatened or actual violation of law by the company the city has its remedy.

The charge of the judge of the criminal court, in the particulars indicated, was erroneous. He also erred in refusing to charge as requested by defendants.

The judgment will be reversed.